IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARRY FREY, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-1416 |
| | : | |
| HERR FOODS INC. EMPLOYEE WELFARE PLAN | : | |
| | : | |

**SURRICK, J.**                                                                                             **DECEMBER   12  , 2012**

## MEMORANDUM

Presently before the Court is Plaintiff's Motion for Confirmation of the Appropriate Standard of Review  (ECF No. 7).  For the following reasons, Plaintiff's Motion will be granted.

**I.    BACKGROUND**

**A.    Procedural History**

Plaintiff filed an Employee Retirement Income Security Act of 1974 ("ERISA") claim against Defendant in the Court of Common Pleas of Chester County, Pennsylvania.  (Compl., ECF No. 1 Ex. A.)  On March 1, 2011, Defendant removed the case to this Court.  (Notice of Removal, ECF No. 1.)  Defendant filed an Answer on March 9, 2011.  (ECF No. 3.)  On April 4, 2011, Plaintiff filed a Motion To Determine The Courts Standard Of Review and a Brief in support thereof.  (Pl.'s Mem., ECF Nos. 7, 8.)  On May 12, 2012, Defendant filed a Response. (Def.'s Mem., ECF No. 13.)

**B.    Factual Background**

Plaintiff was employed by Herr Foods, Inc. as a Peeling Room Operator until he ceased work on or about December 18, 2009.  (Joint Case Report ("JCR") 1, ECF No. 6.)  As an

employee, Plaintiff was a participant in the Herr Foods Inc. Employee Welfare Plan (hereinafter the "Plan"). (*Id.*) Metropolitan Life Insurance Company ("MetLife") is the claims administrator for the Plan. (*Id.*)

In July 2009, Plaintiff experienced a right thalamic lacunar infarct in his brain, commonly known as a stroke, and suffered from numbness and weakness on the left side of his body. (*Id.*) In addition, Plaintiff suffers from severe neck pain and limited range of motion, due to cervical spine degenerative disease, along with hypertension and depression. (*Id.* at 1-2.) Defendant asserts that "Plaintiff's hypertension was controlled, his depression was mild, and the cervical spine degeneration findings were reported as minimally changed compared to his study from 2001, after which time he had been working." (*Id.* at 3.) On six different occasions in 2010, Plaintiff's physician, Daniel Diehl, M.D., determined that Plaintiff was disabled as a result of his physical condition and that improvement was not expected. (*Id.* at 2.) Despite this determination, Dr. Diehl did not require Plaintiff to engage in physical or occupational therapy. (*Id.* at 3.)

On April 17, 2010, a nurse case manager assigned to Plaintiff's disability claim advised that additional medical information was needed to determine whether Plaintiff was disabled. (*Id.* at 2.) Without obtaining additional information, a claims specialist decided on April 22, 2010 that the existing medical record did not support a disability determination. (*Id.*) On April 28, 2010, the claims specialist denied Plaintiff's disability claim. (*Id.*) Plaintiff appealed the denial of benefits. (*Id.*)

After the denial, Defendant issued a peer review report that concluded that the effects of Plaintiff's stroke did not preclude him from returning to work. (*Id.*) Defendant further

determined that Plaintiff's neck pain and cervical spine degenerative disease were not uncommon with aging, and would not prevent him from carrying out his work duties.  (*Id.*)  In making its determination, Defendant did not consider the level of pain Plaintiff was experiencing, nor did it explain why Dr. Diehl's medical opinion was rejected.  (*Id.*)

We are asked to review Defendant's denial of Plaintiff's disability claim and to determine whether Plaintiff is entitled to benefits.  (Compl.)  We must first determine the appropriate standard of review.  Since the parties filed their submissions, the Supreme Court and the Third Circuit have provided additional guidance on the issue before us.  *See CIGNA Corp. v. Amara*, 131 S.Ct. 1866 (2011); *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407 (3d Cir. 2011).

## II.     LEGAL STANDARD

A claim challenging the denial of benefits under ERISA "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  An abuse-of-discretion or arbitrary and capricious standard applies when the plan terms grant "the administrator or fiduciary discretionary authority to make eligibility determinations . . . ."  *Viera*, 642 F.3d at 413.[1]  Ambiguous language in a plan is interpreted in favor of the insured.  *Id.*  (citing *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1258 (3d Cir. 1993)).  Moreover, the burden of demonstrating that the abuse-of-discretion standard applies lies with the plan administrator.  *Id.*  Although summary documents provide communication with beneficiaries about the plan, "their

---

[1] "Abuse-of-discretion" and "arbitrary and capricious" standards of review may be used interchangeably in the ERISA context.  *Viera*, 642 F.3d at 413 n. 4 (citing *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 n. 6 (3d Cir. 2010)).

statements do not themselves constitute the *terms* of the plan" when a plaintiff seeks to enforce a claim governed by ERISA.  *Amara*, 131 S.Ct. at 1878 (emphasis in original).

### III.  DISCUSSION

Plaintiff seeks review of the Plan Administrator's decision to deny long-term disability benefits under a *de novo* standard.  (Pl.'s Mem. 7.)  Plaintiff argues that the ERISA summary plan documents are not part of the Plan Certificate, and therefore, cannot be used to confer discretionary authority upon the Plan Administrator to make eligibility determinations.  (*Id.* at 2-4.)  Plaintiff further contends that the "satisfactory proof" language found within the Plan Certificate is ambiguous and does not clearly grant discretionary authority to the Plan Administrator.  (*Id.* at 4-7.)

Defendant argues that "satisfactory proof" language is sufficient to confer discretionary authority upon the Plan Administrator.  (Def.'s Mem. 4-9.)  Defendant also contends that because the "unambiguous" terms granting discretionary authority to the Plan Administrator in the ERISA summary documents do not conflict with the terms of the Plan Certificate, they are to be integrated into the Plan terms.  (*Id.* at 10-14.)  Defendant asserts that under the circumstances an arbitrary and capricious standard of review is warranted.  (*Id.* at 10.)

In *Viera*, the Third Circuit recently held that the arbitrary and capricious standard is applicable only when the plan "'communicate[s] the idea that the administrator not only has broad-ranging authority to assess compliance with pre-existing criteria, but also has the power to interpret the rules, to implement the rules, and even to change them entirely.'"  *Viera*, 642 F.3d at 417 (quoting *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 639 (7th Cir. 2005)).  In addition, the court determined that language such as "satisfactory to us" is ambiguous and does not confer

discretion on an administrator to re-define a covered loss on a case-by-case basis.  *Id*.  While no "magic words" prompt an abuse-of-discretion review, the court suggested that administrators adopt the following language:  "'[b]enefits under this plan will be paid only if the plan administrator decides in [its] discretion that the applicant is entitled to them.'"  *Id.* (quoting *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000)).

Here, the language of the Plan Certificate defines proof of a disability as "[w]ritten evidence satisfactory to [u]s that a person has satisfied the conditions and requirements for any benefit described in this certificate."  (Certificate of Insurance 22, ECF No. 8 Attach. 1.)  Similarly, the "Evidence of Insurability" section of the Certificate states that insurance coverage is provided only when evidence of insurability is "accepted by [u]s as satisfactory."  (*Id.* at 31.)  The language in the Certificate is not unambiguous and does not alone justify an abuse-of-discretion standard of review.

In contrast, at the end of the Plan Certificate there appears the following language:  **THIS IS THE END OF THE CERTIFICATE - THE FOLLOWING IS ADDITIONAL INFORMATION**.  That additional information contains unambiguous language stating:

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan.  An interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(ERISA Information 2, ECF No. 8 Attach. 1.)  Such language, if part of the Plan Certificate, would, on its face, warrant abuse-of-discretion review of Plaintiff's claim.  This language, however, is part of a summary plan document, and such documents do not on their own

constitute terms of a plan. *Amara*, 131 S.Ct. at 1878. We must therefore determine whether summary plan information can be used to clarify ambiguous language contained within a plan certificate.

In deciding that a *de novo* standard was appropriate in reviewing a life insurance claim, a district court in Virginia recently concluded that language in a summary document granting sole interpretive power of a policy's terms to an insurance company was due no deference. *Shoop v. Life Ins. Co. of N. Am.*, 839 F. Supp. 2d 830, 837 (E.D. Va. 2011). The court reasoned that while information in the summary document could not be used to determine the standard of review, the language from summary documents could be used during a *de novo* review to help define any ambiguous language contained within the plan. *Id.*

Since *Amara*, other courts have agreed that summary plan provisions, including stipulations not present in the plan certificate, are unenforceable. *See, e.g.*, *Kaufmann v. Prudential Ins. Co. of Am.*, 840 F. Supp. 2d 495, 499 (D. N.H. 2012) (concluding that a summary plan document cannot establish appeal procedures that are not contained within the plan document); *Merigan v. Liberty Life Assurance Co. of Boston*, 826 F. Supp. 2d 388, 396-97 (D. Mass. 2011) (holding an appeal deadline set forth in the summary plan document to be unenforceable). However, courts have given deference to summary plan provisions when such provisions are either labeled by the plan administrator as legally enforceable or are referred to in the plan certificate. *See, e.g.*, *Langlois v. Metro. Life Ins. Co.*, 833 F. Supp. 2d 1182, 1185-86 (N.D. Cal. 2011) (holding that a provision in a summary plan document stating that all of its terms are to be "legally enforceable" should be considered enforceable elements of a plan, provided that the summary terms do not conflict with the plan terms); *Tetreault v. Reliance*

*Standard Life Ins. Co.*, No. 10-11420, 2011 WL 7099961, at *8 (D. Mass. Nov. 28, 2011) (concluding that if the summary plan document is expressly labeled as being part of the formal plan document, claims procedures in the summary plan document are part of the plan itself).

Here, the ERISA Information summary document does not provide that its contents are legally enforceable.  (ERISA Information 1-5.)  In addition, although the ERISA summary document may have been provided in a single packet with the Plan Certificate, the summary plan document is neither included in the Benefit Plan Table of Contents (Certificate of Insurance 16-17), nor is it made mention of elsewhere in the Certificate.  Furthermore, the summary plan document follows a page that specifically denotes the end of the Plan Certificate (*id.* at 48).  The unambiguous language in the ERISA Information document granting final eligibility determinations to the Plan administrator does not constitute terms of the Plan Certificate and therefore the language can not be treated as such.

### IV.     CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motion and will apply a *de novo* standard.  An appropriate Order follows.

**IT IS SO ORDERED.**

                                              **BY THE COURT:**

                                              _____
                                              **R. BARCLAY SURRICK, J.**